UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ALLSTAR MARKETING GROUP, LLC
and FELKNOR VENTURES, LLC                   :

                                       :        Civil Action No.: 10 CV

                                       :

                    Plaintiffs,    :

          -against-              :        **COMPLAINT**
                                               **<u>JURY TRIAL DEMANDED</u>**

TELE MARKETERS, INC. d/b/a TEE VEE   :
BRANDS (USA), NOSTALGIC IMAGES, INC.
ORIGINAL TV PRODUCTS, INC., AS SEEN  :
ON TV, LLC, and MAHMOODA HANNAH
YASIR,                               :

                     Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x



        Plaintiffs Allstar Marketing Group, LLC ("Allstar") and Felknor Ventures, LLC

("Felknor") (collectively, "Plaintiffs") as and for their Complaint against Defendants Tele

Marketers Inc. d/b/a Tee Vee Brands (USA) ("Tee Vee Brands"), Nostalgic Images, Inc.

("Nostalgic Images") Original TV Products, Inc. ("Original TV Products"), As Seen on TV, LLC

(TV LLC) and Mahmooda Hannah Yasir ("Yasir") allege as follows:

<u>NATURE OF THIS ACTION</u>

       1.      This is a civil action for patent infringement arising under 35 U.S.C. §1 <u>et seq</u>.,

trademark infringement, trademark dilution, unfair competition, false advertising and false

designation of origin arising under the Lanham Act, 15 U.S.C. §1051 <u>et seq</u>., and related claims

arising under the laws of the State of New.

       2.      By this action, Plaintiffs seek equitable and legal remedies for Defendants'

misappropriation of Plaintiffs' intellectual property rights and false advertising.

#323226.1

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States (Title 35 of the United States Code) and for trademark infringement and false advertising arising under the Lanham Act. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has jurisdiction over Plaintiffs' related New York State law claims under 28 U.S.C. §§1338 and 1367.

5.      Subject matter jurisdiction is further based upon 28 U.S.C. §1332, the parties being of different states and the amount in controversy being in excess of $75,000, excluding interest and costs.

6.      This Court has personal jurisdiction over Defendants in that each of the Defendants has extensive contacts with and regularly ships goods into this judicial district and/or contracts to supply goods within this judicial district and the injuries complained of herein arise from said transactions.  Plaintiff Allstar also maintains its principal place of business in this judicial district.

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b-c) and 1400(b).

## THE PARTIES

8.      Plaintiff Allstar is a corporation duly organized and existing under the laws of the State of New York with its principal place of business at 4 Skyline Dr., Hawthorne, NY 10532.

9.      Plaintiff Felknor is a corporation duly organized and existing under the laws of the State of Tennessee with its principal place of business at 9737 Cogdill Rd, Suite 215, Knoxville, TN 37932.

2

10.     Upon information and belief, Defendant Tee Vee Brands a New Jersey corporation having a place of business at Suite 118, 50 Harrison Street, Hoboken, NJ 07030, USA.

11.     Upon information and belief, Defendant Nostalgic Images is an Ohio corporation having a place of business at 1898 Spruce Street, Defiance, Ohio 435121233.

12.     Upon information and belief, Defendant Original TV Products is a corporation with a place of business at 28 Columbus Ave., Totowa NJ 0751263.

13.     Upon information and belief, Defendant TV LLC is a New Jersey Limited Liability company that maintains a retail store located at 89 South Street Pier 17, New York, New York 10038.

14.     Upon information and belief, Defendant Yasir is an individual having an address at 23 Wayne Towne Center, Wayne, New Jersey 07470.  Upon information and belief, Yasir is the Chief Executive Officer and an owner of Defendant TV LLC and a principal of Defendant Original TV Products.  Upon information and belief, Yasir has full knowledge of and has encouraged, directed and personally participated in the activities of Original TV Products and TV LLC complained of herein.

## BACKGROUND OF THE ACTION

15.     Allstar is a leading producer of household and consumer products specializing in the direct response business.  Allstar is the business of creating, manufacturing, distributing and selling a wide variety of unique household products directly to consumers and retailers.  Allstar spends substantial sums of money to produce and air television commercials to promote and sell products through a variety of channels including direct consumer, retail stores and online sales.

3

16.     Felknor is a leading product invention company that has been instrumental in inventing and developing many leading household and consumer products.

**The '366 Patent**

17.     On March 2, 2010, United States Patent No. 7,669,366 (the "'366 Patent") issued to Wilson Felknor for an invention entitled "Plant Retainer for Retaining A Plant For Growth From The Side or Bottom of Planter." A copy of the '366 Patent is attached hereto as <u>Exhibit A</u>.

18.     Plaintiff Felknor has been assigned the entire right, title, and interest in the '366 Patent.

19.     Allstar has the exclusive right (subject to certain limited reserved rights) to make, use, offer for sale and sell planter products embodying the invention of the '366 Patent.  Allstar also has the right to enforce the '366 Patent against third parties.

**The '278 Patent**

20.     On April 5, 2005, United States Patent No. 6,874,278 (the "'278 Patent") issued to Wilson Felknor for an invention entitled "Planter for Growing Plants Upside Down."  A copy of the '278 Patent is annexed hereto as <u>Exhibit B.</u>

21.     Plaintiff Felknor has been assigned the entire right, title and interest in the '278 Patent.

22.     Allstar has the exclusive right (subject to certain limited reserved rights) to make, use, offer for sale and sell planter products embodying the invention of the '278 Patent.  Allstar also has the right to enforce the '278 Patent against third parties.

**Defendants' Patent Infringement**

23.     Upon information and belief, defendant Tee Vee Brands has been manufacturing, using, selling and/or offering for sale plant retainer devices sold as the "Hang & Grow Tomato

4

Planter," the "Hang & Grow Strawberry Planter" and the "Hang & Grow Pepper Planter" (the "Accused Hang & Grow Products") under the trademark "Eco Solutions" in this District and throughout the United States.

24.     Upon information and belief, defendant Tee Vee Brands supplied the Accused Products to Nostalgic Images and Original TV Products.

25.     Upon information and belief, defendant Nostalgic Images has been manufacturing, using, selling and/or offering for sale the Accused Hang & Grow Products in this District and throughout the United States.

26.     Upon information and belief, defendant Original TV Products contracted for the sale of the Accused Hang & Grow Products in this District, and has been manufacturing, using, selling and/or offering for sale the Accused Hang & Grow Products throughout the United States.

27.     Upon information and belief, defendant Nostalgic Images has also been manufacturing, using, selling and/or offering for sale plant retainer devices sold as the "Pepper Planter" (the "Accused Pepper Planter Products") in this District and throughout the United States.

28.     Upon information and belief, defendants TV LLC and Yasir have been manufacturing, using, selling and/or offering for sale plant retainer devices sold using Plaintiff's TOPSY TURVY trademark (the "Accused TV LLC Products") in this District and throughout the United States.

5

**Plaintiff's TOPSY TURVY® Trademark and Product**

29.      In or about April, 2004, Felknor Ventures, LLC ("Felknor") began using the trademark TOPSY TURVY in interstate commerce in connection with the sale of its patented vertical hanging planter product designed to grow plants upside-down.

30.      In or about July 2008, Plaintiff Allstar and Felknor entered into a license agreement, whereby Felknor granted Allstar the exclusive right to use the TOPSY TURVY trademark in connection with hanging planter products.

31.      Felknor owns several United States trademark registrations for the TOPSY TURVY mark, including Registration No. 3367525 in connection with "planters for flowers and plants" registered on January 15, 2008, for which Allstar is the exclusive licensee.

32.      A true and correct copy of said trademark registration, which is valid and subsisting, is attached hereto as Exhibit C.

33.      Allstar and Felknor have continuously used the TOPSY TURVY trademark in interstate commerce in connection with hanging planter products since April 2004.

34.      Allstar has gone through great effort and expense in developing and promoting the TOPSY TURVY trademark.  Allstar has spent millions to produce and air direct response television advertisements for TOPSY TURVY brand planters and to otherwise promote and sell TOPSY TURVY brand planters.

35.      In particular, TOPSY TURVY brand tomato planters have been marketed and sold extensively on the Internet.

36.      As a result of the significant advertising, promotion and sale of TOPSY TURVY brand planters, Allstar has developed significant goodwill and customer recognition in the TOPSY TURVY trademark.

37.     The public also views the TOPSY TURVY mark as an indication of the high quality of Plaintiffs' hanging planter product.

**Defendants' Trademark Infringement and False Advertising**

38.     The Accused Hang & Grow Products, Accused Pepper Planter Products and the Accused TV LLC Products are nearly identical to the products in Plaintiffs' TOPSY TURVY brand family of products.

39.     Defendant Nostalgic Images has sold the Accused Pepper Planter Products in packaging bearing the designation "TV."

40.     Upon information and belief, Defendant Original TV Products has sold each of the Accused Hang & Grow Products on through its website, located at www.originaltvproducts.com, under the heading, "Wholesale As Seen on TV Products."

41.     Defendants TV LLC and Yasir have sold the Accused TV LLC Products in packaging bearing the designation "As Seen on TV."

42.     Upon information and belief, Defendants have never advertised the Accused Pepper Planter Products, Accused Hang & Grow Products or the Accused TV LLC Products on television.

43.     Upon information and belief Defendants' Products' use of the designations, "TV" and "As Seen on TV" reflects their intent to trade on the goodwill of Plaintiffs, who have advertised their TOPSY TURVY brand hanging tomato, pepper and strawberry planters extensively on television.

44.     After Plaintiff's successful launch of their TOPSY TURVY brand hanging planter product, Defendants TV LLC and Yasir, without the consent or authorization of Plaintiffs have also sold the Accused TV LLC Products in packaging bearing the TOPSY TURVY mark.

45.     Upon information and belief, Defendants' use of the TOPSY TURVY mark reflects their intent to trade on the goodwill Plaintiffs have built in their TOPSY TURVY mark.

## AS AND FOR A FIRST CAUSE OF ACTION
### Infringement of the '366 Patent Under 35 U.S.C. §271
### Against All Defendants

46.     Plaintiffs repeat and re-allege each of the allegations in paragraphs 1 through 45 as if fully set forth herein.

47.     Upon information and belief, Defendants have been and are now directly infringing one or more claims of the '366 Patent by manufacturing, using, selling, licensing, leasing, and/or offering for sale the Accused Hang & Grow Products without the authority of Plaintiffs.

48.     Upon information and belief, Defendants have been and are now inducing others to infringe one or more of the claims of the '366 Patent through their sale and/or offering for sale of the Accused Hang & Grow Products without the authority of Plaintiffs.

49.     Plaintiffs have been and will be damaged and harmed, by Defendants' infringement.

50.     Plaintiffs have no adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION
### Infringement of the '278 Patent Under 35 U.S.C. §271
### Against Defendants TV LLC and Yasir

51.     Plaintiffs repeat and re-allege each of the allegations in paragraphs 1 through 50 as if fully set forth herein.

52.     Upon information and belief, Defendants TV LLC and Yasir have been and are now directly infringing one or more claims of the '278 Patent by manufacturing, using, selling,

8

licensing, leasing, and/or offering for sale the Accused TV LLC Products without the authority of Plaintiffs.

53.     Upon information and belief, Defendants TV LLC and Yasir have been and are now inducing others to infringe one or more of the claims of the '278 Patent through their sale and/or offering for sale of the Accused TV LLC Products without the authority of Plaintiffs.

54.     Plaintiffs have been and will be damaged and harmed, by Defendants TV LLC and Yasir's infringement.

55.     Plaintiffs have no adequate remedy at law.

### AS AND FOR A THIRD CAUSE OF ACTION
### Federal Trademark Infringement Under 15 U.S.C. §1114-
### Against Defendants TV LLC and Yasir

56.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 55 above as if fully set forth herein.

57.     The actions of Defendants TV LLC and Yasir described above, and specifically their use of the TOPSY TURVY mark in interstate commerce on the packaging for the Accused Counterfeit Topsy Turvy Product, constitute infringement of the TOPSY TURVY mark, in violation of 15 U.S.C. § 1114.

58.     Defendants TV LLC and Yasir's unauthorized use in interstate commerce the TOPSY TURVY mark in connection with the sale of their competing hanging planter product is likely to cause confusion, mistake and deception on the part of consumers as to their affiliation, connection, or association with Allstar, and to cause confusion, mistake and deception as to the true origin, sponsorship, or approval of their products, all in violation of 15 U.S.C. §1114.

59.     Upon information and belief, TV LLC and Yasir have undertaken these acts maliciously, willfully and with the devious intent to cause confusion, mistake and deception on the part of the public.

60.     TV LLC and Yasir's acts have damaged Allstar's business reputation and goodwill and unjustly enriched TV LLC and Yasir.

61.     TV LLC and Yasir's acts have caused, and unless enjoined, will continue to cause, irreparable harm and injury to Allstar's business reputation and goodwill for which there is no adequate remedy at law.  TV LLC and Yasir's acts also have caused, and unless enjoined, will continue to cause, inevitable public confusion and substantial and irreparable harm to the public for which there is no adequate remedy at law.  Allstar is therefore entitled to injunctive relief pursuant to 15 U.S.C. §1116.

62.     Pursuant to 15 U.S.C. § 1117, Allstar is also entitled to recover damages in an amount to be determined at trial, including, but not limited to, profits made by TV LLC and Yasir on the sale of planter products using the TOPSY TURVY mark, and the costs of this action.

63.     Upon information and belief, Allstar is further entitled to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C §1117, since TV LLC and Yasir's actions were undertaken willfully and with the intention of causing confusion, mistake and deception on the part of the public.

64.     Upon information and belief, defendant Yasir has directed, encouraged, actively participated, ratified, contributed to and/or adopted the acts of Defendant TV LLC as hereinbefore alleged.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Federal Trademark Dilution Under 15 U.S.C. § 1125(c)
### Against Defendants TV LLC and Yasir

65.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 64 above as if fully set forth herein.

66.     The actions of Defendants TV LLC and Yasir described above, and specifically their unauthorized use of the TOPSY TURVY mark in interstate commerce to advertise, promote, market and sell the Accused TV LLC Products, are likely to cause dilution of the TOPSY TURVY mark by blurring in violation of 15 U.S.C § 1125(c).

67.     The TOPSY TURVY mark was first used in commerce in April 2004, and has been continuously used in commerce since then in connection with the marketing, promotion and sale of planter products.

68.     As a result of Plaintiffs' substantial investment of time, effort and money in advertising of the TOPSY TURVY brand vertical planter the substantial sales of TOPSY TURVY brand vertical planter products, the TOPSY TURVY mark has become famous within the meaning of 15 U.S.C. §1125(c).

69.     Defendants TV LLC and Yasir's actions have diluted and will continue to dilute, the distinctive quality of the famous TOPSY TURVY mark by destroying the association between the TOPSY TURVY mark and the product marketed, distributed and sold by Plaintiffs, in violation of 15 U.S.C. § 1125(c).

70.     Defendants TV LLC and Yasir's acts have caused, and unless enjoined, will continue to cause, irreparable harm and injury to Plaintiffs, including, but not limited to, diminution of the value and goodwill associated with the TOPSY TURVY mark and injury to

11

Plaintiffs' business, for which there is no adequate remedy at law. Plaintiffs are therefore entitled to injunctive relief pursuant to 15 U.S.C. §1116.

71.     Pursuant to 15 U.S.C. § 1117, Plaintiffs are also entitled to recover damages in an amount to be determined at trial, including, but not limited to, profits made by Defendants TV LLC and Yasir on the sale of planter products using the TOPSY TURVY mark, and the costs of this action.

72.     Plaintiffs are further entitled to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C §1117, since Defendants TV LLC and Yasir's actions were undertaken willfully and with the intention of causing confusion, mistake and deception on the part of the public.

73.     Upon information and belief, defendant Yasir has directed, encouraged, actively participated, ratified, contributed to and/or adopted the acts of Defendant TV LLC as hereinbefore alleged.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**Unfair Competition, False Designation of Origin and False Advertising**
**Under 15 U.S.C. § 1125(a)) Against Defendants**
**Original TV Products, Nostalgic Images, TV LLC and Yasir**

74.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 73 above as if set forth fully herein.

75.     Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir have marketed, promoted, sold and/or offered to sell the Accused Hang & Grow Products, the Accused Pepper Planter Products and the Accused TV LLC Products using false advertising.

76.     Defendant Nostalgic Images' use of the "TV" designation in connection with the Accused Pepper Planter Products and Defendant Original TV Products' use of the "As Seen on

TV" designation in connection with the Accused Hang & Grow Products, nearly identical to products in Plaintiffs' TOPSY TURVY brand family of products, are in an attempt to trade on the goodwill of Plaintiffs' genuine products, which have been widely and extensively advertised on television and constitute unfair competition and false advertising, in violation of 15 U.S.C. § 1125(a).

77.     Defendants TV LLC and Yasir's acts described above, and specifically their use of the TOPSY TURVY mark and the designation "As Seen on TV" on the packaging for the Accused TV LLC Products constitute false designation of origin, unfair competition and false representation, in violation of 15 U.S.C. § 1125(a).

78.     Defendants TV LLC and Yasir's unauthorized use in interstate commerce of the TOPSY TURVY mark in connection with the sale of their competing hanging planter product and their use of the "As Seen on TV Designation" is likely to cause confusion, mistake and deception on the part of the public as to their affiliation, connection, or association with Plaintiffs, and to cause confusion, mistake and deception as to the true origin, sponsorship, or approval of Defendants' products, all in violation of 15 U.S.C. §1125(a).

79.     Upon information and belief, Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir have undertaken the above acts maliciously, willfully and with the devious intent to cause confusion, mistake and deception on the part of the public.

80.     Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir's acts have damaged Plaintiffs' business reputation and goodwill, and have unjustly enriched Defendants.

81.     The aforesaid acts of Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir have caused Plaintiffs to sustain monetary damage, loss and injury, in an amount to be determined at the time of trial.

82.     Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir's acts have caused and, unless enjoined, will continue to cause, irreparable harm and injury to Plaintiffs for which there is no adequate remedy at law.

83.     Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir's acts have caused, and unless enjoined, will continue to cause, inevitable public confusion and substantial and irreparable harm to the public.

84.     Plaintiffs are entitled to a preliminary and permanent injunction restraining Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir, or any person or entity acting in concert with them, from engaging in any acts in violation of the United States trademark laws.

### AS AND FOR A SIXTH CAUSE OF ACTION
**Deceptive Trade Practices Under New York Gen. Bus. Law § 349**
**Against Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir**

85.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 84 above as if set forth fully herein.

86.     The actions of Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir described above, and specifically Nostalgic Images,' Original TV Products' use of the "TV" and "As Seen on TV" designations in connection with the Accused Pepper Planter Products and the Accused Hang & Grow Products constitute deceptive trade practices in violation of New York Gen. Bus. Law § 349.

14

87.    The actions of Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir described above, and specifically Defendants TV LLC and Yasir's use of the TOPSY TURVY mark and the "As Seen on TV" designation on the packaging for the Accused TV LLC Products constitute deceptive trade practices in violation of New York Gen. Bus. Law § 349.

88.    By virtue of the aforementioned acts and conduct of Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir, Plaintiffs have sustained, and will continue to sustain, economic damage including, but not limited to, injury to their business reputation, loss of goodwill in the TOPSY TURVY mark and loss of business.

89.    Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs are entitled to recover damages in an amount to be determined at trial, including, but not limited to, profits made by Defendants TV LLC and Yasir by using the TOPSY TURVY mark without authorization and profits made by Defendants Original TV Products, Nostalgic Images, TV LLC and Yasir using the "TV" and "As Seen on TV" designations, in addition the costs of this action.

90.    Upon information and belief, Plaintiffs are further entitled to recover additional treble damages and reasonable attorneys' fees pursuant to N.Y. Gen. Bus. Law § 349(h), since Defendants' actions were undertaken willfully and with the intention of causing confusion, mistake and deception on the part of the public.


**WHEREFORE**, Plaintiffs demand judgment and an order against Defendants, jointly and severally, as follows:

(a)    The Court declare that Defendants infringe the '366 Patent and that Defendant TV LLC and Yasir infringe the '278 Patent.

(b)      Preliminary and permanent injunctive relief restraining Defendants, or any person or entity acting in concert with them, from engaging in any acts in violation of the United States patent, trademark, false advertising and unfair competition laws, including:

(1)      Making, using, selling or offering for sale any products that infringe the '366 Patent or the '278 Patent;

(2)      Engaging in acts that constitute trademark infringement or trademark dilution under the Lanham Act and which would damage or injure Plaintiffs;

(3)      Engaging in acts that constitute false advertising under the Lanham Act and which would damage or injure Plaintiffs;

(4)      Inducing encouraging, instigating, aiding, abetting or contributing to any of the aforesaid acts;

(c)      That Defendants be ordered to deliver up for destruction as the Court shall direct, any and all products that infringe the '366 Patent, the '278 Patent and/or the TOPSY TURVY mark;

(d)      That Defendants recall from all distributors, wholesalers, jobbers, dealers, retailers and customers and deliver to Plaintiffs any products infringing the '366 Patent, the '278 Patent and/or the TOPSY TURVY mark and ;

(e)      That Defendants be directed to file with the Court and serve on Plaintiffs, no later than thirty days after receiving service of the Court's order, a report in writing and under oath setting forth in detail the manner and form in which they have complied with each provision of injunctive relief;

(f)      Awarding Plaintiffs damages in an amount to be proven at trial for damages caused by Defendants' infringement, contributory infringement and induced

16

infringement of one or more claims of the patents-in-suit and treble damages for willful and deliberate infringement pursuant to 35 U.S.C. § 284 and that this case be declared exceptional within the meaning of 15 U.S.C. § 1117 and that accordingly Plaintiffs be awarded the costs and attorney's fees pursuant to that statute and 35 U.S.C. § 285;

(g)     Awarding Plaintiffs damages in an amount to be proven at trial for damages caused by Defendants' trademark infringement, trademark dilution and false advertising;

(h)     That Defendants be ordered to reimburse Plaintiffs for costs and any reasonable attorney's fees incurred as a result of Defendants' infringing activities and false advertising including all attorney's fees incurred during this action;

(h)     That Plaintiffs be awarded both prejudgment and postjudgment interest on any monies to be paid by Defendants;

(i)     Directing the United States Customs Service to issue an exclusion order and/or a cease and desist order pursuant to 19 U.S.C. § 1337; and

(j)     Such other and further relief as to the Court seems just, proper and equitable.

Dated: New York, New York
       May 26, 2010

                                    KANE KESSLER, P.C.

                                    By:_____
                                          Adam M. Cohen (AC-9918)
                                          S. Reid Kahn (SK-1458)
                                          James Hanft (JEH-9230)
                                          Sarah Bawany Yousuf (SY-0305)
                                    1350 Avenue of the Americas
                                    New York, New York 10019
                                    (212) 541-6222

                                    *Attorneys for Plaintiffs*

# EXHIBIT A

Case 1:10-cv-04282-PGG   Document ... Filed ... Page ... of ...

US007669366B2

## (12) United States Patent
### Felknor

(10) Patent No.: **US 7,669,366 B2**
(45) Date of Patent: **Mar. 2, 2010**

(54) **PLANT RETAINER FOR RETAINING A PLANT FOR GROWTH FROM THE SIDE OR BOTTOM OF A PLANTER**

(75) Inventor: **Wilson A. Felknor**, Lenoir City, TN (US)

(73) Assignee: **Felknor Ventures LLC**, Knoxville, TN (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **12/322,904**

(22) Filed: **Feb. 9, 2009**

(65) **Prior Publication Data**

US 2009/0255179 A1    Oct. 15, 2009

**Related U.S. Application Data**

(60) Provisional application No. 61/123,772, filed on Apr. 12, 2008.

(51) **Int. Cl.**
*A47G 7/02*        (2006.01)
(52) **U.S. Cl.** ............................................. **47/65.8**; 47/67
(58) **Field of Classification Search** .................. 47/82, 47/83, 65.7, 65.8
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

3,733,745 A * 5/1973 Ingerstedt et al. .............. 47/77

| | | | | |
|---|---|---|---|---|
| 4,920,695 A | * | 5/1990 | Garden | 47/83 |
| 5,031,359 A | * | 7/1991 | Moffett, Jr. | 47/83 |
| 5,363,594 A | * | 11/1994 | Davis | 47/82 |
| 5,579,603 A | * | 12/1996 | Fukuzumi | 47/58.1 R |
| 6,298,600 B1 | * | 10/2001 | Feldman | 47/67 |
| 6,874,278 B2 | * | 4/2005 | Felknor et al. | 47/67 |
| 7,171,782 B2 | * | 2/2007 | Felknor et al. | 47/73 |
| 2004/0103585 A1 | * | 6/2004 | Yokomori | 49/360 |

FOREIGN PATENT DOCUMENTS

| GB | 2147484 A | * | 5/1985 |
|---|---|---|---|
| GB | 2152345 A | * | 8/1985 |
| JP | 2004141174 A | * | 5/2004 |
| WO | WO 2008143525 A1 | * | 11/2008 |

* cited by examiner

*Primary Examiner*—Francis T Palo
(74) *Attorney, Agent, or Firm*—Michael E. McKee

(57)        **ABSTRACT**

A planter for growing a transplantable plant includes a container having a sidewall and a bottom and further includes a retainer member for retaining a plant which has been transplanted within the container through the sidewall or bottom thereof. The retainer member defines an expandable opening which is movable between expanded and normally-collapsed conditions so that by urging a plant root system end-first against the retainer member, the expandable opening is moved to an expanded condition to permit the root system to pass through the expandable opening into the container interior. Upon passage of the root system through the expandable opening, the expandable opening is permitted to return toward its normally-collapsed condition about the stem of the plant to thereby prevent the withdrawal of the root system of the plant from the container interior through the plant retainer.

**5 Claims, 7 Drawing Sheets**







FIG.4



FIG.5

FIG.6



FIG. 7



FIG.15



FIG.8



FIG.9



FIG.10



FIG.11



FIG.12



FIG. 13

FIG. 14



FIG.16

FIG.17

FIG.18

US 7,669,366 B2

1

# PLANT RETAINER FOR RETAINING A PLANT FOR GROWTH FROM THE SIDE OR BOTTOM OF A PLANTER

The benefit of Provisional Application Ser. No. 61/123,
772, filed Apr. 12, 2008 and entitled PLANTER FOR GROW-
ING A PLANT FROM THE SIDE THEREOF, is hereby
claimed. The disclosure of this referenced provisional patent
application is incorporated herein by reference.

## BACKGROUND OF THE INVENTION

This invention relates generally to gardening accessories
and relates, more particularly, to a planter within which plants
are transplanted for growth.

The type of planter with which this invention is concerned
includes those which are adapted to contain dirt or potting soil
and into which a transplantable plant can be transplanted so
that the plant continues its growth within the planter.

U.S. Pat. No. 7,171,782, on which I was named as a co-
inventor, describes a planter which is adapted to be hung from
an overhead support structure and into which multiple plants
can be transplanted for growth out the sides of the planter.
Such a planter is advantageous in that it enables multiple
plants to be grown in an elevated condition above the ground
(and thereby prevent the exposure of the plants, or the fruit
thereof, to ground-related problems) without the need for
appreciable space (e.g. ground space) for growing the plants.

It would be desirable to provide an improved planter for
growing a plant or multiple plants in an elevated condition
above the ground which embodies alternative means for hold-
ing the roots of a plant within the planter for growth of the
stem of the plant out of the planter.

Accordingly, it is an object of the present invention to
provide a new and improved planter for growing a plant or
multiple plants in an elevated condition above the ground.

Another object of the present invention to provide such a
planter having a container within which plants can be grown
out the side or bottom thereof and including improved means
for retaining the roots of the plants within the container.

Yet another object of the present invention is to provide
such a planter whose grow ports enable plants to be trans-
planted into the container of the planter relatively quickly.

Still another object of the present invention is to provide
such a planter which is uncomplicated in structure, yet effec-
tive in operation.

One more object of the present invention is to provide a
plant retaining means which can be utilized in conjunction
with a grow port formed in a side or bottom of a planter for
retaining a plant within the container for growth out of the
grow port of the container.

## SUMMARY OF THE INVENTION

This invention resides in an improvement for a planter
within which a transplantable plant having a stem and a root
system is desired to be transplanted for growth and wherein
the planter includes a container defining a sidewall or a bot-
tom and an interior.

The improvement is characterized in that there is incorpo-
rated within the container a means for retaining the root
system of a plant which has been transplanted within the
container. The retaining means defines an expandable open-
ing which is movable between an expanded condition and a
normally-collapsed condition so that by urging a transplant-
able plant root system-first against the plant retaining means
from the exterior of the container, the expandable opening is

2

moved to an expanded condition from its normally-collapsed
condition to permit the root system to pass through the
expandable opening into the container interior. Upon passage
of the root system of the plant through the expandable open-
ing as aforesaid, the expandable opening is permitted to
return toward its normally-collapsed condition about the stem
of the transplantable plant to thereby prevent the withdrawal
of the root system of the plant from the container interior
through the plant retaining means.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of one embodiment of a planter
within which features of the present invention are embodied
and shown exploded and partially cut-away.

FIG. 2 is a perspective view of an example of a plant
capable of being transplanted within the FIG. 1 planter for
continued growth of the plant.

FIG. 3 is a fragmentary view of the side of the FIG. 1
planter assembly.

FIG. 4 is a cross-sectional view taken along line 4-4 of FIG.
1.

FIGS. 5-7 are views which illustrate the sequential steps
involved in transplanting the plant of FIG. 2 through the
planter grow port provided in the bottom of the FIG. 1 planter.

FIG. 8 is a cross-sectional view taken along line 8-8 of FIG.
3.

FIGS. 9-12 are views which illustrate the sequential steps
involved in transplanting a plant like that of the FIG. 2 plant
through a planter grow port provided in the side of the FIG. 1
planter.

FIGS. 13 and 14 are side views of alternative embodiments
of planters which embody features of the present invention.

FIG. 15 is a fragmentary side view of a container showing
an exemplary retainer for covering a grow port of the con-
tainer.

FIG. 16 is a perspective view of a still another alternative
planter within which features of the invention are embodied.

FIG. 17 is a side view of a fragment of yet still another
planter within which a triangular-shaped retainer member is
incorporated.

FIG. 18 is a side view of a fragment of one more planter
within which a square-shaped retainer member is incorpo-
rated.

## DETAILED DESCRIPTION OF AN ILLUSTRATIVE EMBODIMENT

Turning now to the drawings in greater detail and consid-
ering first FIG. 1, there is illustrated an embodiment, gener-
ally indicated 20, of a planter within which features of the
present invention are incorporated. The planter 20 includes a
container 22 within which plants are transplanted for growth
and a hanger assembly 24 which facilitates the suspension of
the container 22 above a floor or underlying surface.

The container 22 includes wall means, generally indicated
23, having sidewalls 44 and a bottom 42 which define a
plurality of openings, or grow ports, through which trans-
planted plants are permitted to grow. Most of these container
openings are provided by side grow ports 26 which open out
of the sidewalls 44 of the container 22, while one container
opening is provided by a bottom grow port 36 which opens
out of the container bottom 42. Furthermore, there is associ-
ated with each grow port 26 or 36 a plant retaining means,
generally indicated 18, in the form of a retainer member 27,
described herein, having a body which is adapted to hold a
plant within the container 22 for growth out of the side or

US 7,669,366 B2

3                                                                                              4

bottom of the container 22. In connection with the foregoing, each retainer member 27 is used with a corresponding plant for supporting the plant for growth out the side or bottom of the container 22 through the grow ports 26 or 36.

With reference to FIG. 2, there is illustrated an example of a plant 28 which is capable of being transplanted within the container 22 of the planter 20 for continued growth therein. The depicted plant 28 includes a root system 30 (which commonly is encased in an amount, or ball, of dirt) and a stem 32 which extends from the root system 30. As will be apparent herein and in order to transplant the plant 28 through one of the planter grow ports 26 or 36, described herein, the plant 28 is directed root system-first into the grow port 26 or 36 until the root system 30 is completely moved through, or clears, the retainer member 27 and is positioned within the interior of the container 22. The retainer member 27 thereafter prevents the withdrawal of the root system 30 from the grow port 26 or 36 so that the plant 28 is in a secured condition within the grow port 26 or 36 while the plant stem 32 either extends laterally, or outwardly to the side, of the sidewall of the container 22 through a side grow port 26 or extends downwardly of the container 22 through the bottom grow port 36. With the plant 28 secured within the container 22 in this manner, the planter 20 accommodates the continued growth of the plant 28 while its stem 32 extends through the side grow port 26 or the bottom grow port 36.

With reference again to FIG. 1, the container 22 is in the form of an elongate bag 40 constructed, for example, of a flexible plastic material whose bottom and sidewalls provide the bottom 42 and sidewalls 44 of the container 22 and which, when filled with dirt or potting soil to the expanded condition, as depicted in FIG. 1, provides the bag 40 with a substantially cylindrical form. To help preserve the cylindrical form of the bag 40 when filled with dirt or potting soil, a stiff, circular plate 46 (FIG. 1) having a center opening 47 can be positioned within the bottom 42 of the bag 40 so that the center opening 47 is aligned with the bottom grow port 36. Defined along the sidewalls 44 are a plurality of circular openings 48 (FIG. 3) which provide the side grow ports 26 and which provide access to the interior of the bag 40 through the sidewalls 44 thereof, and there is defined within the bottom 42 a circular opening 49 (FIG. 1) which provides the bottom grow port 36 which provides access to the interior of the bag 40 through the bottom 42 thereof.

Within the bag 40 of the depicted container 22, there are defined twenty-one sidewall openings, or side grow ports 26, which are regularly disposed about the bag sidewalls 44 and there is defined one bottom opening, or bottom grow port 36 disposed centrally therein. It will be understood, however, that a planter which embodies features of the present invention can include an alternative number of side or bottom grow ports 26 or 36.

Furthermore, it will also be understood that although the depicted container 22 has substantially vertically-disposed sidewalls 44 within which the grow ports 21 are positioned and a horizontally-disposed bottom within which the grow port 26 is positioned, a grow port in accordance with the broader aspects of this invention can be incorporated within a sidewall of a container which is not vertically-oriented or in a bottom which is not horizontally-oriented. Accordingly and as used herein, the terms "side", "sidewall" and "bottom" of a container are intended to include every surface of a container in which a grow port which possesses the features described herein can be incorporated, and the principles of this invention can be variously applied.

As best shown in FIGS. 3, 4 and 8, there is associated with each grow port 26 or 36 a retainer member 27 whose body has

been attached (e.g. sewn) to the sidewalls 44 or bottom 42 so as to substantially cover a grow port 26 or 36 defined therein. To this end and as exemplified in the FIG. 3 view, each retainer member 27 is comprised of a relatively flat piece 54 of resiliently flexible material having a circular periphery, or outer (i.e. circumferential) edge, 57 and the retainer member 27 is attached (e.g. sewn) to the sidewalls 44 or bottom 42 with stitches 50 which extend along a path adjacent the circular periphery 57 of the member 27. Furthermore, each retainer member 27 is secured to the container 22 about a corresponding grow port 26 or 36 so that one side, or the interior side, face of the retainer member 27 faces the interior of the container 22 while the opposite side, or the exterior side, face of the retainer member 27 faces exterior of the container 22.

Moreover and as will be apparent herein, each retainer member 27 defines an expandable opening, indicated 19 in FIG. 3, which is adapted to be moved between an expanded condition and a normally-collapsed condition so that by urging a transplantable plant 28 root system-first against the plant retainer member 27 from the exterior of the container 22, the expandable opening 19 is moved to an expanded condition from a normally-collapsed condition to permit the plant root system 30 to pass through the expandable opening 19 into the container interior and so that upon passage of the root system 30 through the expandable opening 19, the expandable opening is permitted to return toward its normally-collapsed condition about the stem 32 of the transplantable plant 28 to thereby prevent the withdrawal of the root system 30 of the plant 28 through the plant retainer member 27 from the container interior.

Within the depicted planter 20, each retainer member 27 includes a peripheral portion 51 disposed adjacent the periphery 57 of the retainer member 27 and plurality of finger portions 52 which are integrally joined with and extend inwardly (e.g. radially-inwardly) of the peripheral portion 51 of the retaining member 27 to a tip 59. As best shown in FIG. 3, each finger portion 52 is in the form of a elongated, wedge-shaped section having a larger end which is disposed adjacent the peripheral portion 51 and a smaller end, or tip, disposed adjacent the center of the member 27 and opposite side edges which converge toward one another as a path is traced from the larger end of the finger portion 52 toward the smaller end thereof.

The material out of which the retainer member 27 is formed is preferably a plastic material, such as a thin vinyl material, and the member 27 is severed along substantially straight paths 56 (see FIG. 3) to provide each finger portion 52 with a substantially V or wedge-shaped appearance. Each finger portion 52 includes a free, or unattached, end section 58 which, because of its flexible nature, can be flexed inwardly of the bag 40 from an undeformed (i.e. unflexed), planar condition (as is illustrated, for example, in solid lines in FIGS. 4 and 8) to a flexed condition (as is illustrated, for example, in phantom in FIGS. 4 and 8) and is permitted to return from its flexed condition, under the influence of its inherent resiliency, toward its undeformed condition. Each retainer member 27 of the depicted planter 20 is provided by eight finger portions 52, although an alternative number of finger portions 52 (e.g. three) can be had, and each end section 58 terminates at the tip 59 (rounded in shape) adjacent the center of the retainer member 27.

It follows, therefore, that the finger portions 52 collectively provide the expandable opening 19 for the member 27 which is substantially closed when the finger portions 56 are in their undeformed (i.e. unflexed), planar condition (as is illustrated, for example, in solid lines in FIGS. 4 and 8) and is expandable

5

to provide a substantially larger opening as the finger portions 56 are urged (i.e. moved) from the planar, or unflexed, condition to the flexed condition (as is illustrated, for example, in phantom in FIGS. 4 and 8). Furthermore and due to the inherent resiliency of the retainer member 27, the finger members 56 are continually biased from the flexed condition toward the unflexed condition.

With reference again to FIG. 1, the planter 20 further includes means for cooperating with the hanger assembly 24 with which the container 22 can be suspended from an elevated support so that the planter 20 is rendered as a hanging planter. To this end, the container 22 includes an upper ring 62 which is sewn into the upper edge of the bag 40, and the bag 40 has a plurality of (e.g. three) notches 80 which are spaced about the upper end of the container 22 which provide access to the ring 62. The hanger assembly 24 is attachable to the ring 62 of the container 22 by way of the notches 80 for suspension of the container 22 from an elevated support (not shown). In this connection, the hanger assembly 24 includes a plurality of (e.g. three) cable members 84 which are joined together at one end thereof (i.e. the upper end as seen in FIG. 1) by way of a ring-bearing swivel 86 which is adapted to be looped about a hook (not shown) or similar fastener joined to the elevated support for suspension of the container 22 therefrom. To attach the ends of the cable members 84 (i.e. the cable ends opposite the swivel end thereof) to the container 22, each cable end is passed through a corresponding notch 80, looped around the ring 62 and then attached to itself with a clamp 88. With the cable members 84 attached to the ring 62 in this manner, the container bag 40 can be suspended by the cable members 84 and swivel 86.

The planter 20 also includes a decorative rim member 92, best shown in FIG. 1, which is positionable atop the container 22 and which supports a top member 94. The rim member 92 is formed in the shape of a ring and is adapted to rest along the upper edge of the container 22 as the planter 20 is suspended from an elevated support. In the depicted planter 20, the cable members 84 of the cable system 82 are intended to pass through preformed holes 96 provided in the top of the rim member 92 to help secure the rim member 92 in place atop the container 22 during use of the planter 20. In this connection, the ends of the cable members 84 (i.e. the cable member ends opposite the swivel-end) are each routed through a corresponding preformed hole 96 before being attached to the ring 62 sewn within the bag 40 for attachment thereto.

The top member 94, introduced above, of the planter 20 serves as a cover for the bag 40 and provides an access port through which water and fertilizer (i.e. liquid or granular) can be introduced into the top of the container 22. In this connection, the top member 94 includes a central, funnel-shaped section 98 for funneling water and fertilizer poured downwardly to a central opening 99. Furthermore, the top member 94 includes an outer edge 100 which can be accepted by the interior of the rim member 92 for support of the top member 96 atop the rim member 92.

It will be understood that water or fertilizer which is desired to be directed into the planter 20 for the purposes of watering and feeding the plants grown within the container 22 is poured into the funnel-shaped section 98 of the top member 94 and is thereafter permitted to flow downwardly into the dirt or potting soil contained within the container 22 by way of the central opening 99 of the top member 94.

To transplant a plant 28 into the bottom grow port 36 of the planter 20, a plant 28 is grasped by the stem 32 (as illustrated in FIG. 5) and directed root-end-first upwardly through the center of the grow port 36 until the root system 30 moves past and thereby clears the tips 59 of the end sections 58 of the

6

finger portions 52 of the retainer member 27 associated with the grow port 36. It will be understood that as the root system 30 of the plant 28 is urged against the finger portions 52, the finger portions 52 or, more specifically, the end sections 58 thereof, are permitted to flex inwardly of the container 22 (from the FIG. 4 unflexed condition) to expand the size of the expandable opening 19 and to thereby accommodate the movement, or passage, of the root system 30 into the container interior.

After the root system 30 of the plant 28 is moved far enough into the interior of the bag 40 (i.e. past the tips 59), the finger portions 52 (due to the inherent resiliency of the finger portions 52) are permitted to spring back toward the relaxed, or unflexed, condition, as illustrated in FIG. 7, at which the tips 59 of the finger portions 52 are permitted to contact and bear against the stem 32 of the plant 28. With the finger portions 52 in contact with the plant stem 32 as depicted in the FIG. 7 condition, the finger portions 52 are arcuate in shape, rather than perfectly flat, as a path is traced radially outwardly along the finger portions 52 from the tips 59 thereof.

If desired and following the return of the finger portions 52 toward the FIG. 7 condition, it may be desirable that the stem 32 be pulled outwardly of the container 22 a short distance to move the root system 30 closer to, or even into contact with, the inwardly-facing sides of the finger portions 52 and to thereby position most of the plant stem 32 external of the container 22. If such a movement of the stem 32 is desired, it may be necessary to manually spread the finger portions 52 apart (to thereby relieve pressure upon the plant stem 32 by the tips 59) and manually pull the stem 32 outwardly through the grow port 36 by a short distance to a desired position of rest before releasing the finger portions 52 from the spread-apart condition. Because the tips 59 of the finger portions 52 are rounded, no damage to the plant 28 is likely to result as a consequence of the contact between the tips 59 of the finger portions 52 and the stem 32.

With the finger portions 52 positioned about and in contact with the plant stem 32 when in the arcuate condition illustrated in FIG. 7, the finger portions 56 resist further movement of the tips 59 toward the planar condition of FIG. 4. Such a resistance to movement of the root system 30 out of the container interior through the retainer 27 is believed to be due, at least in part, to the fact that forces which must be exerted upon the plant 28 to urge the root system 30 outwardly through the retainer member 27 are exerted upon the finger portions 52 (by way of the root system 30 or stem 32) as forces which tend to compress the finger portions 52 along the length thereof (i.e. radially outwardly along the finger portions 52 from the tips 59 thereof).

In other words and although the finger portions 52 can be moved (i.e. flexed) with relative ease from the FIG. 4 planar condition toward the FIG. 6 solid-line condition during which forces are urged along paths which are substantially normal to the exterior face of the retainer member 27, forces which tend to compress the finger portions 52 along the length thereof (i.e. in a radially-outward direction from the tips 59 thereof) are resisted by the finger members 52. Consequently and because the finger members 52 resist forces of a compressive nature which would be required to move the finger members 52 from the FIG. 7 arcuate condition toward (and past) the perfectly flat condition depicted in solid lines of FIG. 4, the finger members 52 resist the withdrawal of the plant root system 30 through the retainer member 27 from the container interior and thereby hold the plant 28 in place through the bottom grow port 36 with little likelihood that the plant 28 will fall out of the port 36. Thus, the retainer member 27 operates to permit the plant root system 30 to be passed with

7

relative ease in one direction through the retainer member 27 (i.e. from the exterior of the container 22 to the interior thereof) but, upon passage of the root system 20 through the retainer member 27 into the container interior, resists the withdrawal of the root system 27 out of the container interior through the retainer member 27.

Once the plant 28 is positioned in place within the grow port 36 as aforedescribed, dirt or suitable potting soil, indicated 120 in FIG. 7, can be thereafter placed into the container 22 and positioned (e.g. loosely packed) about the root system 30 of the plant 28 (as illustrated in FIG. 7) so that the added dirt or potting soil 120 is positioned about, and thereafter contributes further to the support of the plant 28 within the container 22.

With reference to FIGS. 9 to 12 and to transplant a plant 28a (whose stem 32a and root system 30a are identical with the stem 32 and root system 30, respectively, of the plant 28 of FIG. 2) into a side grow port 26 of the planter 20, dirt or suitable potting soil, indicated 120 in FIG. 9, is placed within the container 22 of the planter 20 until the horizontal level of the dirt or potting soil placed within the planter 20 reaches to about the horizontal level of the lower edge of a side grow port 26. It follows that if a plant 28a is desired to be transplanted through each side grow port 26 of the planter 20, then the dirt or potting soil 120 is first placed within the container 22 only until it reaches to about the level of the lower edge of the lowermost side grow port 26. At that point, a plant 28a is grasped by the stem 32 (as illustrated in FIG. 9) and directed root-end-first through the center of the lowermost side grow port 26 until the root system 30a clears the tips 59 of the finger portions 52 of the retainer member 27 surrounding the side opening associated with the side grow port 26. It will be understood that as the root system 30a of the plant 28a is urged against the finger portions 52, the finger portions 52 are permitted to flex inwardly of the container 22 to accommodate the passage of the root system 30a through the expanded opening 19 of the retainer member 27. After the root system 30 of the plant 28 moves far enough into the interior of the bag 40 to clear the tips 59 of the finger portions 52, the finger portions 52 are permitted to spring back toward the relaxed, or unflexed, condition, as illustrated in FIG. 11, at which the tips 59 of the finger portions 52 are permitted to contact and bear against the stem 32a of the plant 28a. Because the tips 59 of the finger portions 52 are rounded, no damage is likely to result to the plant 28a from its contact with the tips 58 of the finger portions 52.

The aforediscussed reasons that the finger portions 52 resist withdrawal of the plant root system 30 through the bottom grow port 36 apply to the side grow ports 26 as well. In other words and as best viewed in FIG. 11, with the finger portions 52 positioned about and in contact with the plant stem 32, the finger portions 52 assume an arcuate condition so that any forces which might be exerted upon the plant 28a to urge the root system 30a outwardly through the retainer member opening 19 tend to compress the finger portions 52 (by way of the root system 30a or stem 32a) along the length thereof (i.e. radially outwardly along the finger portions 52 from the tips 59 thereof). Consequently and because the finger members 52 resist forces of a compressive nature which would be required to move the finger members 52 from the FIG. 11 arcuate condition toward (and past) the perfectly flat condition depicted in FIG. 8, the finger members 52 resist the withdrawal of the plant root system 30a from the container interior through a side grow port 26 and thereby hold the plant 28a in place through the side grow port 36.

Once the plant 28a is held in place through the grow port 26, the user can release the stem 32a of the plant 28a and the

8

container 22 can continue to be filled with dirt or suitable potting soil. More specifically, dirt or suitable potting soil 120 can thereafter be placed into the container 22 (as illustrated in FIG. 12) and positioned about the root system 30a of the plant 28a so that the added dirt or potting soil 120 contributes further to the support of the plant 28a within the container 22. The aforedescribed steps of placing dirt or potting soil 120 into the container 22 to about the (horizontal) level of the next-highest side grow port 26, directing a plant 28a root-end-first through the grow port 26 so that the finger portions 52 hold the plant 28 within the grow port 26, and then placing dirt or potting soil 120 around the root system 30a of the plant 28a being transplanted are repeated, as necessary or as desired, until a plant 28a is positioned within each side grow port 26 for growth out of the sides of the container 22. Additional potting soil 120 can thereafter be positioned within the interior of the container 22 to fill any vacant space remaining therein.

As a retained plant is permitted to grow within its container and its stem increases in diameter, the tips 59 of the fingers portions 52 are permitted to flex outwardly to accommodate the increase in size of the plant stem. Thus, the plant retaining means 18 associated with the aforedescribed grow ports 26 or 36 is not believed to retard or harm the growth of the plant as, for example, its stem enlarges, and the plant retaining means 18 is further advantageous in this respect.

It will be understood that numerous modifications and substitutions can be had to the aforedescribed embodiment 20 without departing from the spirit of the invention. For example, although the aforedescribed planter 20 has been shown and described as including grow ports 26, 36 in the sidewalls and bottom of the container 22, it will be understood that alternative embodiments of this invention may include grow ports in only the sidewalls thereof or may include grow ports in only the bottom thereof. Furthermore, there are illustrated in FIGS. 13 and 14 alternative embodiments of containers of various shapes and sizes and which incorporate features of the present invention. In particular, there is depicted in FIG. 13 a container 140 having eight grow ports 142 (only four shown in FIG. 13) defined in the sidewalls thereof wherein the grow ports 142 are arranged in two rows around the container 140, and each grow port 142 of the top row is vertically disposed above a grow port 142 of the bottom row. Furthermore, there is depicted in FIG. 14, a container 150 having eight grow ports 152 (only four shown in FIG. 14) defined in the sidewalls thereof wherein the grow ports 152 are arranged in two rows around the container 140, and each grow port 152 of the top row is vertically staggered with respect to the grow ports 152 of the bottom port 152.

Still further and by way of example, there is illustrated in FIG. 15 an alternative container 220 embodying features of the present invention and including a grow port 226 having a diameter of about 3.0 inches and a circular retainer member 227 associated with, or covering, the grow port 226. The retainer member 227 includes eight finger portions 252 regularly spaced therearound, and each finger portion 252 is spaced from its adjacent finger portion 252 by a gap 230 having a width of about 0.105 inches. The overall diameter of the retainer member 227 is about 3.75 inches, and each gap 230 as measured across the retainer 227 is about 3.212 inches in length. In addition, the central opening of the retainer member 227 as defined between the tips 259 of the finger portions 252 (when in a relaxed, or unflexed, condition) is about 0.727 inches in diameter. Still further, the retainer member 227 is comprised of Vinyl and has a thickness of about 0.025 inches. It will be understood, however, that

9

10

retainer members of alternative sizes (i.e. having a diameter, for example, between about one inches and about five inches) can be had.

Further still, although the retainer members 27 of the aforedescribed embodiments have been shown and described as being formed from relatively thin pieces of sheet material, the retainer members may take alternative forms. For example, a retainer member in accordance with this invention can be formed as a molded element which provides the retainer member with a substantial thickness.

Yet still further, although the retainer members 27 of the aforedescribed embodiments have been shown and described as separately-identifiable components which have been joined to the container of a planter so as to substantially cover the grow ports provided therein, a retainer member in accordance with the broader interests of the present invention can be integrally formed as part of the container. For example, there is illustrated in FIG. 16 a planter 320 having a container 322 provided with a bottom 342 and sidewalls 344, and there are associated with the sidewalls 344 plant retaining sections, indicated 327, wherein each section 327 provides both a side grow port and an expandable opening 319 through which a plant can be transplanted into the container 322.

In the FIG. 16 embodiment 320, each retaining section 327 is incorporated within the sidewalls 344 of the container 322 and includes a plurality of wedge-shaped finger portions 352 having small ends, or tips, which extend inwardly (e.g. radially inwardly) of the retaining section 327 from an outer periphery of the retaining section 322. The material comprising the sidewalls 344 provides the finger portions 352 with a sufficient degree of resiliency and flexibility so that by urging a plant root-system first against the center of a retaining section 322 from the exterior of the container 322, the finger portions 352 which define the expandable opening 319 are splayed, or moved, to a flexed condition from a normally-collapsed (e.g. planar) condition to permit the root system to pass through the expandable opening 319 into the container interior and so that upon passage of the root system through the expandable opening 319, the flexed finger portions 352 are permitted to return toward the normally-collapsed condition about the stem of the transplantable plant to thereby prevent the withdrawal of the root system of the plant through the retaining section 327 from the container interior.

Moreover and although each retainer member 27 of the aforedescribed embodiment of FIGS. 1 and 3-12 has been shown and described as having a circular outer edge, retainer members can take any of a number of alternative shapes in accordance with the broader aspects of the present invention. For example, there is illustrated in FIG. 17 a triangular-shaped retainer member 350 which can be attached to a sidewall or bottom of a container 352 so as to substantially cover a triangular-shaped grow port 356 provided therein, and there is illustrated in FIG. 18 a square-shaped retainer member 360 which can be attached to a sidewall or bottom of a container 362 so as to substantially cover a square-shaped grow port 366 provided therein. In the retainer member 350 of the FIG. 17 embodiment, there are provided three finger members 358 whose tips are directed inwardly of the member 350 from the three side edges thereof, and in the retainer member 360 of the FIG. 18 embodiment, there are provided four finger members 368 whose tips are directed inwardly of the member 360 from the four side edges thereof.

Accordingly, the aforedescribed embodiments are intended for the purpose of illustration and not as limitation.

The invention claimed is:

1. A planter for growing a transplantable plant having a root system and a stem which extends from the root system, the planter comprising:

a container having an interior, an upper end, a lower end, and a sidewall extending between the upper and lower ends, and a bottom, at least one of the sidewall and the bottom defining a grow port opening therein; and

a retainer member for retaining a plant desired to be transplanted within the container through the grow port, the retainer member including a piece of resiliently flexible sheet material having an outer circumferential edge and being joined to the at least one of the sidewall and the bottom so as to substantially cover the grow port opening defined therein, and the retainer member further includes finger portions which are directed substantially inwardly of the outer edge of the piece of sheet material and which permit the root system of a plant desired to be transplanted within the planter to be inserted through the grow port opening yet prevent the withdrawal of the root system from the container interior through the grow port opening so that the plant is thereby supported within the container for growth of the plant stem outwardly of the container through the grow port.

2. The planter as defined in claim 1 wherein the outer circumferential edge of the piece of sheet material surrounds the grow port opening, and each of the finger portions have tips which are biased substantially inwardly of the outer circumferential edge of the piece of sheet material, and the flexibility of the finger portions permit the finger portions to be moved from a unflexed condition at which the tips of the finger portions are substantially co-planar with one another and a flexed condition at which the tips of the finger portions are disposed at least partly within the interior of the container to accommodate the insertion of the root system of the plant into the container through the grow port as the finger portions are permitted to flex between the unflexed and flexed condition and so that upon movement of the plant root system past the tips of the finger portions during insertion of the plant root system into the container through the grow port opening, the finger portions are permitted to return toward the unflexed condition and into contact with the stem of the plant.

3. The planter as defined in claim 2, wherein each of the finger portions is relatively flat when in its unflexed condition and has side edges which converge toward one another as a path is traced toward the tip of the finger portion.

4. The planter as defined in claim 2 wherein the finger portions are regularly spaced about the outer circumferential edge of the piece of sheet material.

5. A plant retainer for a planter in which a transplantable plant having a stem and a root system is desired to be transplanted for growth and wherein the planter includes a container defining a sidewall and a bottom and an interior and wherein at least one of the sidewall and the bottom has a grow port defining an opening therein, the plant retainer comprising:

a plant retaining body which is attachable to the planter so as to substantially cover the grow port opening defined therein and having an expandable opening which is movable between an expanded condition and a normally-collapsed condition so that by urging a transplantable plant root system-first against the plant retaining body from the exterior of the container, the expandable opening is moved to an expanded condition from its

US 7,669,366 B2

11

12

normally-collapsed condition to permit the root system to pass through the expandable opening into the container interior and so that upon passage of the root system through the expandable opening, the expandable opening is permitted to return toward its normally-collapsed condition about the stem of the transplantable

plant to thereby prevent the withdrawal of the root system of the plant through the plant retaining body from the container interior.

* * * * *

# EXHIBIT B



US006874278B2

(12) **United States Patent**
    Felknor et al.

(10) Patent No.: **US 6,874,278 B2**
(45) Date of Patent: **Apr. 5, 2005**

| | | | | | | |
|---|---|---|---|---|---|---|
| 5,333,409 | A | * | 8/1994 | Mendes | ......................... | 47/67 |
| 6,058,651 | A | * | 5/2000 | Perez | ......................... | 47/65.8 |
| 6,094,861 | A | * | 8/2000 | Sandman et al. | .............. | 47/67 |
| 6,298,600 | B1 | * | 10/2001 | Feldman | ......................... | 47/67 |

(54) **PLANTER FOR GROWING PLANTS UPSIDE DOWN**

(75) Inventors: **Wilson A. Felknor**, Clinton, TN (US);
**Jim Ferron**, Loudon, TN (US)

(73) Assignee: **Felknor Ventures, LLC**, Clinton, TN (US)

( * ) Notice:   Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/700,062**

(22) Filed: **Nov. 3, 2003**

(65) **Prior Publication Data**

US 2004/0123522 A1 Jul. 1, 2004

**Related U.S. Application Data**

(60) Provisional application No. 60/423,695, filed on Nov. 4, 2002.

(51) Int. Cl.$^7$ ................................................ **A01G 9/02**
(52) U.S. Cl. ....................................................... **47/67**
(58) Field of Search ...................... **47/67, 65.5**

(56) **References Cited**

U.S. PATENT DOCUMENTS

226,922  A  *  4/1880  Moses ......................... 220/212

FOREIGN PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| AU | 9334065 | A | * | 9/1993 | ............ A01G/9/02 |
| GB | 2147484 | A | * | 5/1985 | ............ A01G/9/02 |

* cited by examiner

*Primary Examiner*—Teri Pham Luu
*Assistant Examiner*—Francis T. Palo
(74) *Attorney, Agent, or Firm*—Michael E. McKee

(57)   **ABSTRACT**

A planter for growing a transplanted plant upside down utilizes a container having an interior, a bottom and a hole defined within the bottom and further utilizes a retainer member which is attachable to the plant desired to be transplanted within the planter. Furthermore, the retainer member cooperates with the container for supporting the plant through the hole defined within the container bottom so that the root system is exposed to the interior of the container and so that the plant stem extends downwardly from the bottom of the container.

16 Claims, 4 Drawing Sheets





FIG. 1

FIG. 2

FIG. 9



FIG. 3





FIG. 6

FIG. 8

US 6,874,278 B2

**1**

## PLANTER FOR GROWING PLANTS UPSIDE DOWN

The benefit of Provisional Application Ser. No. 60/423,695, filed Nov. 4, 2002 and entitled PLANTER FOR GROWING PLANTS UPSIDE DOWN, is hereby claimed. The disclosure of this referenced provisional application is incorporated herein by reference.

### BACKGROUND OF THE INVENTION

This invention relates generally to gardening accessories and relates, more particularly, to planters within which plants are transplanted for growth.

The type of planter with which this invention is concerned includes those which are adapted to contain dirt or potting soil and a plant which is transplanted within the potting soil so that the plant continues its growth within the planter.

Accordingly, it is an object of the present invention to provide a new and improved planter within which plants can be transplanted for growth.

Another object of the present invention is to provide such a planter within which plants are transplanted for growth of the plant upside down or, in other words, root-end-up.

Still another object of the present invention is to provide such a planter which can be easily suspended in an elevated condition above the ground for tending of the plant.

Still one more object of the present invention is to provide such a planter wherein the plant being grown therein can be fed and watered with relative ease.

Yet another object of the present invention is to provide such a planter which is readily collapsible to facilitate shipping, packaging and storing of the planter.

A further object of the present invention is to provide such a planter which is uncomplicated in construction yet effective in operation.

### SUMMARY OF THE INVENTION

This invention resides in a planter for growing a transplantable plant having a root system and a stem which extends from the root system.

The planter includes a container having an interior, a bottom and a hole defined within the bottom. Furthermore, the planter includes a retainer member which is attachable to the plant desired to be transplanted within the planter and which cooperates with the container for supporting the plant through the hole defined within the container bottom so that the root system is exposed to the interior of the container and so that the plant stem extends downwardly from the bottom of the container.

The planter of this invention presents an interesting, visually-pleasing and enjoyable way to grow garden plants, such as the tomato. Moreover, the planter eliminates the need to dig transplanting holes, any, dealing with ugly plants (such as the tomato) which would otherwise sprawl across the ground when grown therein, any need to stake the plant, any need to tie up limbs of the plant, any problems with ground insects (such as cutworms and the like), problems with ground fungus and other soil diseases, any problems with nematodes, or any problems due to cyclical watering (and resulting blossom end rot and woody tasting tomatoes.

Moreover, the planter, while suspended in an elevated condition from a support structure at about chest height permits a user to sucker (i.e. remove center growth of the plants from between adjacent stems thereof) while standing

**2**

adjacent the planter. Thus, the planter provides a means by which plants, such as the tomato, can be pruned with relatively little work and no bending over or working while on the knees.

Further, the planter permits the user to water and fertilize the plant grown within the planter by simply pouring in a mixture of liquid fertilizer and water into a reservoir at the top of the planter on a periodic basis (e.g. about twice a week). Thus, the water which is needed by the plant being grown goes directly to the plant roots, with no dramatic loss due to run-off.

Further still, the planter is versatile in that it is capable of growing flowers, as well as garden plants. Any type of flower, even those which do not cascade, can be grown in the planter upside down. Each flower being grown will curl up and around the planter, searching for light. This allows the user to create a new way to present even an old (e.g. ordinary) variety of flowers in an attractive manner.

Yet still further, the planter can be employed in many additional and special ways, such as growing herbs close to the kitchen in which the herbs will be used. For example, the herbs can be grown in a sunny window in the kitchen or on a nearby deck thus enabling a cook to clip and use the growing herbs as needed. With the large audiences now regularly watching the cooking shows presented on television, a source of fresh herbs is increasing in demand.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a planter within which features of the present invention are embodied.

FIG. 2 is a perspective view of an example of a plant capable of being transplanted within the FIG. 1 planter for continued growth of the plant.

FIG. 3 is a perspective view of the FIG. 1 planter, shown exploded and partially cut-away.

FIG. 4 is a transverse cross-sectional view of the bottom member of the FIG. 1 planter and the retainer member positionable within the bottom member.

FIG. 5 is a bottom view of the FIG. 4 bottom member as seen from below in FIG. 4.

FIG. 6 is a perspective view illustrating the installation, or positioning, of the plant of FIG. 2 into the bottom member of the, FIG. 1 planter.

FIG. 7 is a cross-sectional view of the bottom member of FIG. 6, taken about along line 7—7 of FIG. 6 and shown with the plant of FIG. 2 installed therein.

FIG. 8 is a fragmentary perspective view of the FIG. 1 planter, shown with the funnel insert piece removed from the remainder of the planter.

FIG. 9 is a transverse cross-sectional view of the top assembly of the FIG. 1 planter.

### DETAILED DESCRIPTION OF THE ILLUSTRATED EMBODIMENT

Turning now to the drawings in greater detail and considering first FIGS. 1 and 3, there is shown an embodiment, generally indicated 20, of a planter within which features of the present invention are incorporated. The planter 20 includes a container 22 having an interior 24 and divider means, indicated 25, including at least one divider 26 (two shown in FIG. 2) which is positionable within the container 22 for separating the container interior 24 into a lower compartment and at least one upper compartment. As will be apparent herein, an upper compartment of the container

US 6,874,278 B2

3

interior 24 provides a cavity within which a soil-less mix can be placed and onto which water and/or fertilizer can be poured while the lower compartment can contain dirt or potting soil and the roots of a plant to be grown within the planter 20. In any event, it is the interior 24 of the container 22 within which materials used for plant growth are placed.

The planter 20 also includes a bottom member 32 which is positionable within the bottom of the container 22 and a retainer member 33 which cooperates (in a manner set forth herein) with the bottom member 32 for supporting the root system of a transplantable plant in an inverted, or root-end-up, orientation within the interior 24 of the container 22. A top assembly 36 including an upper ring member 38 and a funnel insert piece 40 is positionable atop the container 22, and a hanger system 37 is connectable to the upper end of the container 22 for suspending the planter 20 from an elevated support structure (not shown) by way of, for example, a hook 41.

An example of a plant capable of being transplanted into the planter 20 for continued growth of the plant is illustrated in FIG. 2. The depicted plant, indicated generally 23, includes a root system 44 (which commonly is encased in an amount of dirt) and a stem 46 which extends from the root system 44. As will be apparent herein, the retainer member 33 (FIG. 3) is positionable about the stem 46 of the plant 23, and the retainer member 33 is, in turn, supported within the bottom member 32 of the planter 20 so that the root system 44 is positioned within the interior of the container 22 and the (remainder of the) stem 46 extends downwardly and out through the bottom member 32 of the planter 20. With the plant 23 positioned within the planter 20 in this manner, the planter 20 accommodates the continued growth of the plant 23 while the plant 23 is oriented upside down, or in other words, root-end-up.

With reference again to FIGS. 1 and 3, the container 22 is in the form of an open-topped receptacle, or bag 48, including cylindrical sidewalls 50 and a bottom 52 having a center hole 54 (FIG. 7) opening therethrough. Preferably, at least the sidewalls 50 of the bag 48 are flexible in nature to permit the bag 48 (and thus the planter 20) to be collapsed to a relatively flat condition upon the bottom 52 for shipping, packaging or storage of the planter 20. In addition, a plurality of small drain holes 42 (FIG. 7) are disposed within the bottom 52 of the bag 48 to accommodate drainage and help prevent possible root rot.

The material out of which the bag 48 is constructed is preferably a flexible material, such as plastic or fabric, but other materials can be used. For purposes of supporting the container 22 in a suspended condition, there are provided a plurality of (e.g. three) reinforced openings 58 which are regularly spaced about the top of the bag 48. As will be apparent herein, these openings 58 cooperate with the hanger system 37 for supporting the (remainder of the) planter 20 from an elevated support structure.

The bottom member 32 (best shown in FIGS. 3–5) is plate-like in form and is constructed of relatively rigid material, such as stiff plastic, and has a circular recess section 60 formed centrally therein, and the bottom of the recess section 60 includes a center hole 64 so that an inwardly-directed flange 66 encircles the center hole 64. The bottom member 32 is sized to be positionable within the bottom of the bag 48 while the circular recess section 60 is sized to be accepted by the center hole 54 (FIG. 7) formed in the bottom of the bag 48. Therefore and when the bottom member 32 is positioned within the bottom of the bag 48, the recess section 60 protrudes downwardly through

4

the center hole 54 of the container bottom 52. As will be apparent herein, the center hole 64 of the recess section 60 provides the opening through which the stem 46 of the plant 23 extends as the root system 44 is supported within the interior 24 of the container 22. If desired, the bottom member 32 can be reinforced with a plurality of ribs 68 (FIG. 4) extending between the recess section 60 and the periphery of the bottom member 32.

With reference again to FIG. 3, each divider 26 of the divider means 25 is platen-like in shape, porous in nature, and has a diameter which is slightly smaller than that of the bag 48 so that each divider 26 can be positioned within the container 22 to separate the interior thereof into a lower compartment and at least one upper compartment. In the depicted planter 20, each divider 26 is comprised of an open-cell foam material and is provided with a plurality of small drainage holes 56 (FIG. 1) which extend between the upper and lower surfaces of the divider 26.

As mentioned earlier, an upper compartment of the bag 48 provides a cavity within which a soil-less mix can be contained and into which water and/or fertilizer can be poured while the lower compartment is intended to contain dirt or potting soil placed therein, as well as the root system of the plant 23 to be grown within the planter 20. Because of the porous nature of the divider 26, water and/or fertilizer positioned above the lower compartment is permitted to seep downwardly through the divider 26 where it is dispersed through the dirt or potting soil for absorption by the plant 23 through its root system 44. The material out of which each divider 26 is constructed is preferably soft porous foam material, such as a porous polyurethane foam, but other materials can be employed.

With reference to FIGS. 3, 4, 6 and 7, the retainer member 33 of the depicted planter 20 is in the form of a foam body 34 which is substantially cylindrical in form and which is sized to be accepted by the circular recess of the recess section 60 and rest upon the inwardly-directed flange 66 when placed downwardly into the recess section 60, as illustrated in FIG. 4. In addition, the foam body 34 includes a slit 70 which extends from about the center of the body 34 to the outer periphery thereof. By manually spreading the foam body 34 apart at the slit 70 (as illustrated in FIG. 4), the slit 70 is in condition to accept the stem 46 of a plant 23 inserted sideways therein and so that by inserting the plant stem 46 sideways therein and subsequently releasing the foam body 34, the inherent resiliency of the foam body 34 closes the slit 70 about the plant stem 46. With the slit 70 closed about the plant stem 46 in this manner, and the foam body 34 positioned within the recess section 60 of the bottom member 32 (as illustrated in FIG. 7), dirt, potting soil or other material used for plant growth and which is positioned adjacent the root system 44 within the container interior 22 is prevented from falling out of the container 24 through the center hole 64 of the recess section 60. It follows that the foam body 34 acts as a retainer member which cooperates with the bottom member 32 for holding the plant 23 (FIGS. 1 and 2) in an upside-down condition within the bottom of the planter 20.

With reference again to FIGS. 1 and 8, the hanger system 37 is attachable to the bag 48 by way of the reinforced openings 58 for suspension of the bag 48 from an elevated support (not shown). In particular, the hanger system 37 includes a plurality of (i.e. three) cable members 84 which are joined together at one end thereof (i.e. the upper end as seen in FIGS. 1 and 8) by way of a closed ring 86 which is adapted to be looped about the hook 41 (FIG. 1) or similar fastener anchored within an overhead structure for suspen-

US 6,874,278 B2

5

sion of the container 22 therefrom. The hanger system 37 further includes a set of pins 88 which are each joined to the end of a corresponding cable member 84 opposite the ring end thereof. To attach the pins 88 to the container openings 58, each pin 88 is manually oriented alongside its corresponding cable member 84 and then inserted one-end-first through a reinforced opening 58 from the inside of the bag 48. By releasing the pin 88 after its has completely passed through the opening 58, the pin 88 cannot be pulled through the opening 88 by pulling upon the opposite end of the cable member 84.

With reference to FIGS. 8 and 9, the upper ring member 38 of the top assembly 36 provides a decorative rim for the planter 20 and is positionable atop the bag 48 for supporting the funnel insert piece 40 of the top assembly 36. The ring member 38 is adapted to rest upon the upper edge of the bag 48 as the planter 20 is suspended from an elevated support. If desired, male and female components of snap-type fasteners 90 (FIGS. 8 and 9) can be secured along the upper edge of the bag 48 and the inside surface of the upper ring member 38, respectively, to prevent the upper ring member 38 and bag 48 to be connected to one another in a snap-fit relationship. Such a connection between the upper ring member 38 and bag 48 helps to prevent inadvertent separation between the bag 48 and the upper ring member 38.

In the depicted planter 20, the cable members 84 of the hanger system 37 are intended to pass through preformed holes 96 (FIGS. 1 and 8) provided in the ring member 38 to help secure the ring member 38 in place atop the bag 48 during use of the planter 20. In this connection, each pin 88 of the cable system 37 is initially routed through a corresponding preformed hole 96 before being routed through a corresponding reinforced opening 58 of the bag 48 for attachment thereto.

With reference to FIGS. 1 and 9, the funnel insert piece 40, introduced above, of the top assembly 36 serves as a cover for the container 22 and includes a central funnel-shaped section 94 for funneling water and fertilizer poured therein downwardly to a central opening 98. Furthermore, the funnel insert piece 40 includes an outer edge 100 (best shown in FIG. 9) which can be accepted by the interior of the ring member 38 for support of the funnel insert piece 40 atop the ring member 38. In use, the insert piece 40 can be easily and readily removed from the ring member 38 to expose the mouth of the container 22.

Of the several components of the aforedescribed planter 20, each of the funnel insert piece 40, upper ring member 38, and bottom member 32 are preferably constructed (e.g. molded) out of a hard plastic.

Exemplary dimensions of the planter 20 and its components are as follows: The upper ring member 38 is about ten inches in diameter and the central opening, or mouth, of the upper ring member 38 is about 8.5 inches. Each divider 26 is about 9 inches in diameter and about 0.25 inches thick. The funnel insert piece 40 is about nine inches in diameter, and the central opening 98 thereof is about two inches in diameter. The bottom member 32 is about nine inches in diameter, the central opening 64 of the circular recess section 60 is about 2.5 inches in diameter, and the foam body 34 has a diameter of about 3.5 inches and a thickness of about one inch. The bag 48 is slightly larger than nine inches in diameter, it is about seventeen inches high, and its (bottom) center hole 54 is about 3.625 inches in diameter. Each of the cable members 84 of the hanger assembly 37 is about twenty-one inches long.

Assuming the planter 20 is fully assembled (with the dividers 26 and foam body 34 positioned within the con-

6

tainer interior 24), the planter 20 can be used in the following manner to transplant a plant 23 therein. First, the planter 20 should be suspended from an overhead support structure by way of the hanger system 37 so that the planter 20 is suspended at a convenient height for working within the container interior 24. Next, the funnel insert piece 40 is removed from the upper ring member 38, and then the dividers 26 and foam body 34 are removed from the container interior 24 through the upper ring member 38. The plant 23 is then inserted root-end-first up through the center hole of the 64 of the recess section 60 of the bottom member 32 until the root system 44 is disposed within the container interior 24 and above the bottom member 32. At that point and as illustrated in FIG. 6, the foam body 34 is held in a manner which spreads the body apart at the slit 70 and its slit 70 is directed over the stem 46 of the plant 23 until the stem 46 is positioned within the slit 70. The foam body 34 is then released so that its slit 70 traps the plant stem 46 within the body 34, and then the plant 23 and foam body 34 is lowered toward the bottom member 32 to position the foam body 34 within the recess section 60 and so that the stem 46 depends downwardly from the planter container 22. It will be understood that when positioned within the recess section 60, the foam body 34 rests upon the inwardly-directed flange 66 thereof.

It is the case with some plants, such as tomatoes, that more than one plant can be positioned within the slit 70 of the foam body 34 for simultaneous growth of the plants. In any event, the foam body 34 holds the plant (or plants) trapped within the slit 70 within the bottom member 32 and provides a plug through which material, such as that used for plant growth, downwardly through the center hole 64.

An amount of materials, such as styrofoam peanuts or gravel, is then placed atop the bottom member 32 to form a shallow layer therein (of about 1.5 inches in depth), and then a soil-less (and preferably well-moistened) mix of, for example, Canadian peat, vermiculite and perlite is carefully placed by hand inside the bag 48 and around the root system 44 of the plant 23. All of the lower open areas within the bottom of the bag 48 should be firmly filled with the soil-less mix. Upon filling the soil-less mix to about one-third up from the bottom of the bag 48, one of the dividers 26 is then be placed on top of the soil-less mix. When placed within the bag 46, Each divider 26 help to keep water and fertilizer properly distributed throughout the compartment disposed beneath the divider 26, and when soil occasionally gets too dry, prevents water from flowing through the divider 26 too rapidly.

Next, well-moistened soil-less mix continues to be added within the bag 48 until the bag 48 is about two-thirds full. The other divider 26 is then placed upon the later-added amount of soil-less mix. Finish filling the bag 48 with the bag 48 with the wet soil-less mix, leaving about a two-inch air gap at the very top of the bag 48. The funnel insert piece 40 is then replaced upon the upper ring member 38, and the planter 20 can be re-hung (if desired) to place or height more desirable than the place or height at which a plant 23 was transplanted into the planter 20.

It will be understood that numerous modifications and substitutions can be had to the aforedescribed embodiment without departing from the spirit of the invention. For example, although the aforedescribed foam body 34 has been illustrated and described as being insertable downwardly into the recess section 60 of the bottom member 32 through the bag 46, a comparable (foam) retainer member can be slightly compressed by hand and then inserted upwardly into the recess section 60 from the underside

US 6,874,278 B2

7

8

thereof. Upon release of the (foam) retainer member, the retainer member expands to substantially fill the recess section 60 and rest upon the inwardly-directed flange 66 thereof. Accordingly, the aforedescribed embodiment is intended for the purpose of illustration and not as limitation.

What is claimed is:

1. A planter for growing a transplantable plant having a root system and a stem which extends from the root system, the planter comprising:

a container having an interior, a bottom and a hole defined within the bottom; and

a retainer member which is positionable about the stem of the plant desired to be transplanted within the planter and which cooperates with the container for supporting the plant through the hole defined within the container bottom so that the root system is exposed to the interior of the container and so that the plant stem extends downwardly from the bottom of the container;

the retainer member being in the form of a foam body having an outer periphery and which is positionable within the interior of the container so that when positioned about the stem of the plant and positioned within the interior of the container, the retainer member is prevented from falling out of the hole defined within the container bottom, and wherein the foam body has a slit therein which extends from about the center of the foam body to the outer periphery thereof for accepting the stem of the plant desired to be transplanted by spreading the foam body apart at the slit and inserting the plant stem sideways into the slit; and

the container includes means associated with the container bottom for surrounding the outer periphery of the foam body so that upon inserting the stem of the plant desired to be transplanted into the slit of the foam body so that the foam body is positioned about the stem of the plant and then positioning the foam body, with the plant stem accepted thereby, into the interior of the container adjacent the bottom thereof while the slit is held in a closed condition about the plant stem, the outer periphery of the foam body is confined within a prescribed area and thereby prevented from expanding outwardly by the associated means so that the slit is prevented from spreading apart from its closed condition about the plant stem.

2. The planter as defined in claim 1 wherein the associated means defines a radially inwardly-directed flange which substantially encircles the hole defined within the container bottom, and the foam body is prevented from falling out of the container bottom through the hole thereof by the radially inwardly-directed flange.

3. The planter as defined in claim 1 further including divider means for separating the interior of the container into an upper compartment and a lower compartment so that materials used for plant growth can be separated from one another within the container interior.

4. The planter as defined in claim 3 wherein the divider means includes a body which is porous in nature for permitting the passage of water and fertilizer from the upper compartment of the container and into the lower compartment thereof.

5. The planter as defined in claim 4 wherein the divider means includes a body of foam material which is sized to span the interior of the container when positioned therein.

6. The planter as defined in claim 4 wherein the divider means includes a multiple of bodies of porous material for dividing the interior of container into a lower compartment and a multiple of upper compartments.

7. The planter as defined in claim 1 wherein the container includes a bag having flexible sidewalls which permit the bag to be collapsed for shipping, packaging and storage.

8. The planter as defined in claim 1 wherein the outer periphery of the foam body is cylindrical in shape, and the associated means includes a circular recess section having sidewalls for nestingly accepting the foam body when the foam body is positioned within the interior of the container so that when the foam body is positioned about the stem of the plant desired to be transplanted and then the foam body, with the plant stem accepted thereby, is positioned within the circular recess section, the foam body spans the entire width of the circular recess section so that the outer periphery of the foam body is prevented from expanding outwardly by the sidewalls of the circular recess section.

9. A planter for growing a transplantable plant having a root system and a stem which extends from the root system, the planter comprising:

a container having an interior for containing dirt or potting soil within which the plant can be grown, a bottom and a hole defined within the bottom; and

a retainer member which is positionable about the stem of the plant desired to be transplanted within the planter and which cooperates with the container for supporting the plant through the hole defined within the container bottom so that the root system is exposed to dirt or potting soil contained within the interior of the container and so that the plant stem extends downwardly from the bottom of the container;

the retainer member being in the form of a foam body having an outer periphery and which is positionable within the interior of the container so that when positioned about the stem of the plant and positioned within the interior of the container, the retainer member is prevented from falling out of the hole defined within the container bottom, and wherein the foam body has a slit therein which extends from about the center of the foam body to the outer periphery thereof for accepting the stem of the plant desired to be transplanted by spreading the foam body apart at the slit and inserting the plant stem sideways into the slit; and

the container includes means associated with the container bottom for surrounding the outer periphery of the foam body so that upon inserting the stem of the plant desired to be transplanted into the slit of the foam body so that the foam body is positioned about the stem of the plant and then positioning the foam body, with the plant stem accepted thereby, into the interior of the container adjacent the bottom thereof, the outer periphery of the foam body is confined within a prescribed area and thereby prevented from expanding outwardly by the associated means so that the slit is thereby prevented from spreading apart from its closed condition about the plant step.

10. The planter as defined in claim 9 wherein the associated means defines a radially inwardly-directed flange which substantially encircles the hole defined within the container bottom, and the foam body is prevented from falling out of the container bottom through the hole thereof by the radially inwardly-directed flange.

11. The planter as defined in claim 10 further comprising divider means for separating the interior of the container into an upper compartment and a lower compartment so that materials used for plant growth can be separated from one another.

12. The planter as defined in claim 11 wherein the divider means includes a body which is porous in nature for per-

US 6,874,278 B2

9

mitting the passage of water and fertilizer from the upper compartment of the container and into the lower compartment thereof.

13. The planter as defined in claim 12 wherein the divider means includes a body of foam material which is sized to span the interior of the container when positioned therein.

14. The planter as defined in claim 12 wherein the divider means includes a multiple of bodies of porous material for dividing the interior of container into a lower compartment and a multiple of upper compartments.

15. The planter as defined in claim 9 further including means for supporting the planter from an elevated support structure.

10

16. The planter as defined in claim 9 wherein the outer periphery of the foam body is cylindrical in shape, and the associated means includes a circular recess section having sidewalls for nestingly accepting the foam body when the foam body is positioned within the interior of the container so that when the foam body is positioned about the stem of the plant desired to be transplanted and then the foam body, with the plant stem accepted thereby, is positioned within the circular recess section, the foam body spans the entire width of the circular recess section so that the outer periphery of the foam body is prevented from expanding outwardly by the sidewalls of the circular recess section.

*  *  *  *  *

# EXHIBIT C

Int. Cl.: 21

Prior U.S. Cls.: 2, 13, 23, 29, 30, 33, 40 and 50

## United States Patent and Trademark Office

Reg. No. 3,367,525
Registered Jan. 15, 2008

## TRADEMARK
## PRINCIPAL REGISTER

# TOPSY TURVY

FELKNOR VENTURES LLC (TENNESSEE LTD LIAB CO)
9737 COGDILL RD., SUITE 215
KNOXVILLE, TN 37932

FOR: PLANTERS FOR FLOWERS AND PLANTS, IN CLASS 21 (U.S. CLS. 2, 13, 23, 29, 30, 33, 40 AND 50).

FIRST USE 4-5-2004; IN COMMERCE 4-5-2004.

THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 76-676,391, FILED 5-4-2007.

MARIAM MAHMOUDI, EXAMINING ATTORNEY